IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Harrisonburg Division

| | | |
|---|---|---|
| JENNIFER SEIDEN, | ) | |
| Plaintiff, | ) | Civil Action No. 5:19-cv-00067 |
| | ) | |
| v. | ) | MEMORANDUM OPINION |
| | ) | |
| OMNI HOTELS MANAGEMENT | ) | |
| CORPORATION, et al., | ) | By:   Joel C. Hoppe |
| Defendants. | ) | United States Magistrate Judge |

This matter is before the Court on Plaintiff Jennifer Seiden's Motion for Leave to File

Amended Complaint, ECF No. 58 ("Pl.'s Mot. for Leave to Amend"). This motion has been fully

briefed and argued, *see* ECF Nos. 59, 60, 61, and is ripe for disposition. For the reasons stated

below, the Court will GRANT Plaintiff's motion.

I. Procedural History

Plaintiff filed her original complaint in the Circuit Court for the City of Richmond in

2019. *See* Notice of Removal Ex. 4, Compl., ECF No. 1-4. She alleged that she sustained injuries

while "participat[ing] in a group Segway tour" during a July 2018 stay at one of Defendants'

resorts. *Id.* ¶¶ 13–16, 31–38. She further alleged that she fell because her tour leader led the tour

"along a rocky, uneven, and hilly trail," *id.* ¶ 26; because Defendants failed to "warn[] or inform[

her] of the risk of driving a Segway on a rocky, uneven, hilly pathway," *id.* ¶ 28; and because

Defendants failed to properly train her on how to drive a Segway, *id.* ¶¶ 20–25. More

specifically, she alleged that she practiced driving "on a flat, concrete area . . . for approximately

five minutes," *id.* ¶ 24, before being "instructed to follow the[] tour leader," *id.* ¶ 25, who "led

the group on a downhill, rocky, and uneven path that evidently had been washed out by recent

rain storms," *id.* ¶ 29. Plaintiff alleged that "[a]s she went downhill," her Segway "suddenly

jerked as it hit a rock and/or gully on the path," *id.* ¶ 31, throwing her backwards "onto the rocky

1

ground" and causing her to hit "the back of her head," injure "her head, back, tailbone, jaw, and torso in the process," and require emergency medical assistance, *id.* ¶¶ 31–32, 38. Thus, Plaintiff sued Defendants for negligence and failure to warn. *See id.* ¶¶ 40–50. She also included an *ad damnum* clause indicating that she sought $3,000,000 in damages plus pre-judgment interest from July 8, 2018. *Id.* at 10.

Defendants removed the action to federal court in July 2019. *See generally* Notice of Removal, ECF No. 1. The parties then exchanged written discovery, conducted depositions, and exchanged initial expert disclosures. *See* Second Am. Sched. Order, ECF No. 39 (Aug. 11, 2020). Plaintiff filed the instant motion for leave to amend in June 2021. At the time, about two weeks remained before the July 2 deadline to file motions to amend pleadings and the July 6 deadline to complete fact discovery, and about three months remained before the October 2021 trial date. *See* Second Am. Sched. Order 1–3. Plaintiff seeks to amend her original complaint by increasing the damages claimed in her *ad damnum* clause and by supporting her factual allegations with additional information. *See generally* Pl.'s Mot. for Leave to Amend Ex. 1, Proposed Am. Compl., ECF No. 58-1. She argues that she is merely attempting "to refine [her] allegations based on information that has become available through the discovery process" and emphasizes that her proposed amendments "do not add parties, do not add claims, [and] do not shift the theories of recovery." Pl.'s Mot. for Leave to Amend ¶ 1. Defendants oppose the motion. Defs.' Opp'n to Pl.'s Mot. for Leave to Amend, ECF No. 60 ("Defs.' Opp'n").

## II. Standard of Review

Federal Rule of Civil Procedure 15 dictates the circumstances in which a party may file an amended pleading. *See* Fed. R. Civ. P. 15(a)(1)–(2). Although Plaintiff may not amend her complaint as a matter of course at this late stage in litigation, Fed. R. Civ. P. 15(a)(1), she may

amend her complaint with the Court's leave or with the Defendants' written consent, Fed. R.

Civ. P. 15(a)(2). "The court should freely give leave when justice so requires," *id.*, and in

keeping with the Fourth Circuit's "policy to liberally allow amendment," *Galustian v. Peter*, 591

F.3d 724, 729 (4th Cir. 2010). "This liberal rule gives effect to the federal policy in favor of

resolving cases on their merits instead of disposing of them on technicalities." *Laber v. Harvey*,

438 F.3d 404, 427 (4th Cir. 2006) (en banc). Accordingly, the Fourth Circuit has held that "such

leave should be denied *only when* the amendment would be prejudicial to the opposing party,

there has been bad faith on the part of the moving party, or the amendment would be futile."

*Franks v. Ross*, 313 F.3d 184, 193 (4th Cir. 2002) (internal quotation marks omitted); *see also*

*Equal Rights Ctr. v. Niles Bolton Assocs.*, 602 F.3d 597, 603 (4th Cir. 2010).

## III. Discussion

A.      *Plaintiff's proposed amendment to her* ad damnum *clause will not prejudice Defendants*

Plaintiff seeks to amend the *ad damnum* clause in her complaint to increase the damages

sought from $3,000,000 to $5,000,000. Proposed Am. Compl. at 8, ECF No. 58-1. Defendants

oppose this change. Specifically, they contended at oral argument that Plaintiff's proposed

increase in the *ad damnum* clause would be prejudicial because it would require them to involve

an additional layer of insurance coverage that has not played any role in this litigation to date.

They contended that involving that excess insurance carrier shortly before trial would deprive the

carrier of the ability to conduct discovery. Defendants' argument is unpersuasive.

Had this action remained in Virginia state court, Plaintiff's damages would have been

capped at the figure reflected in her operative pleading's *ad damnum* clause. *See Powell v. Sears*

*Roebuck & Co.*, 344 S.E.2d 916, 919 (Va. 1986) ("In Virginia, a plaintiff cannot recover more

than he sues for though he can recover less."). But once the case was removed to federal court,

Plaintiff's *ad damnum* clause lost any such significance. In federal court, "the relief to which a [plaintiff] is entitled is not limited to the relief [she] requested in [her] original demand for judgment." *Gilbane Bldg. Co. v. Fed. Reserve Bank of Richmond*, 80 F.3d 895, 901 (4th Cir. 1996); *see also Dotson v. Ford Motor Co.*, 218 F. Supp. 2d 815, 816 (W.D. Va. 2002) ("The complaint need not set forth the amount of general compensatory damages sought, and even if it does, the amount of the verdict may exceed the amount demanded in the complaint."); Fed. R. Civ. P. 54(c) (providing that except for default judgments, all final judgments "should grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings"). "[T]his is a matter of federal procedure, even in a diversity case," *Dotson*, 218 F. Supp. 2d at 816 (citing *Riggs, Ferris & Geer v. Lillibridge*, 316 F.2d 60, 62 (2d Cir. 1963)), and it means that an *ad damnum* clause "serves no practical purpose in a contested case, since '[t]he propriety of the verdict is tested by the evidence, not the *ad damnum* clause,'" *id.* (quoting *Smith v. Brady*, 390 F.2d 176, 177 (4th Cir. 1968)) (alteration in original).

Defendants' argument that an increase in the *ad damnum* clause is prejudicial because it would require them to bring in an additional layer of insurance coverage at this stage in the litigation is unavailing. Even if including an additional insurance carrier creates practical difficulties for their litigation team, Defendants cannot claim unfair prejudice where, regardless of the amount sought in the *ad damnum*, the jury may award damages in any amount "justified by the evidence." *Dotson*, 218 F. Supp. 2d at 816; *see also id.* at 816 (rejecting defendant's argument that an increase in plaintiff's *ad damnum* clause from $3,000,000 to $10,000,000 six weeks before trial "unfairly prejudiced" defendant because it had been "proceeding on a theory that the plaintiff's damages were capped by the amount of the ad damnum"); *Violette v. Armonk Assocs., L.P.*, 849 F. Supp. 923, 930 (S.D.N.Y. 1994) (granting plaintiffs' motion to significantly

increase *ad damnum* clause because defendants' argument that the amendment might require them "to retain personal counsel to protect their interests beyond available insurance coverage" did not demonstrate sufficient prejudice); *Greenspon v. Supermarkets Gen. Corp.*, 744 F. Supp. 77, 78 (S.D.N.Y. 1990) (rejecting defendant's argument that increasing compensatory damages sought in *ad damnum* clause from $1 million to $4 million would prejudice defendant because its "carrier for liability in excess of 1.5 million dollars ha[d] never been notified of the claim in view of plaintiff's 1 million dollar *ad damnum*"); *Roorda v. Am. Oil Co.*, 446 F. Supp. 939, 948 (W.D.N.Y. 1978) (granting plaintiffs' motion for leave to amend *ad damnum* clause and rejecting defendants' argument "that they have proceeded on the assumption that maximum actual damages in the case would be $50,000 and that defense counsel's preparation, strategy and tactics might have been different if the increased amount of damages sought were known earlier"). Accordingly, I find no prejudice in allowing Plaintiff to amend her original *ad damnum* clause.

B.    *Plaintiff's proposed amendments to her factual allegations will not prejudice Defendants because they merely provide additional detail and because Defendants have had ample opportunity to investigate them through discovery*

Plaintiff "seeks to refine the allegations upon which [her] claims are based in response to information that has arisen during the discovery and deposition process." Pl.'s Br. in Supp. of Pl.'s Mot. for Leave to Amend 2, ECF No. 59 ("Pl.'s Br. in Supp."). She argues that her proposed amendments reflect "information learned during the discovery process revealing that Defendants offered Segway tours and training that disregarded unique characteristics of Segway x2 Personal Transporters" and failed to properly train Plaintiff on how to use a Segway x2 PT in light of those characteristics. *Id.* Specifically, Plaintiff explains that Defendants produced a Segway "Getting Started Manual," which warns users to "[a]void obstacles and slippery surfaces

that could result in a loss of balance or traction and cause a fall," instructs that "riding over slippery surfaces, loose objects and materials, or steep slopes can cause the Segway PT to lose traction," and "provides illustrations of how a Slip can occur due to loss of traction from riding on loose materials like gravel." *Id.* at 3–4. Plaintiff's revised allegations are rooted in this manual's guidance, which Plaintiff alleges Defendants violated in numerous ways. *See* Pl.'s Reply 8–9, ECF No. 61. Specifically, Plaintiff contends that the tour pathway was a "gravel surface[] with loose materials," Pl.'s Br. in Supp. 4; that Defendants asked tour participants to sign a "release and waiver form" that did not inform users "that the Segway manufacturer warns against operating a Segway on a gravel surface or one with loose materials and other obstacles," *id.* at 5; and that Defendants failed to adequately train users to traverse such surfaces in the manner provided by the manual, *id.* at 5–6 (explaining that the manual directs users to "[s]tep down off the Segway PT, and walk with [it] in Riderless Balance Mode to move around obstacles, stairs, or terrain that is difficult to navigate"). Plaintiff also argues that Defendants did not produce the manual until February 10, 2021, contending that this was "20 months" after Plaintiff served her first discovery requests and "only *after* Plaintiff had discovered through other sources the number of ways that Defendants violated the standards set forth in the Manual." Pl.'s Reply 8. And, she contends that Defendants cannot claim surprise or prejudice because she informed Defendants as early as January 8, 2021, of her focus on Defendants' alleged knowledge of and failure to warn or train regarding the manual's warnings pertaining to riding on terrain with "loose materials (like sand/gravel)." *Id.*; *see generally id.* at 2–9.

Defendants oppose Plaintiff's proposed amendments to her factual allegations. *See generally* Defs.' Opp'n 3–6. They argue that her proposed amendments "present[] new grounds for liability based upon [the] manufacturer's guidelines in a Segway user manual," which would

"substantially prejudice" Defendants at this "late stage" of litigation. *Id.* at 1–2. Defendants also

argue that the manual has been publicly available online since September 2019, that Plaintiff

made no reference to the manual during her February 2021 deposition (which occurred two

weeks after Defendants produced the manual to Plaintiff's attorneys), that Plaintiff made no

reference to the manual "in identifying the way(s) in which Omni allegedly breached its duty of

care to her" in supplemental discovery responses served in June 2021, and that Plaintiff's

proposed amended complaint "contains new allegations" that "'change[] the character of th[is]

litigation.'" *See id.* at 2–4 (quoting *Deasy v. Hill*, 833 F.2d 38, 42 (4th Cir. 1987)). Here, again,

Defendants' arguments are unpersuasive.

Fourth Circuit precedent dictates that district courts must "liberally allow amendment,"

*Galustian*, 591 F.3d at 729, unless "the amendment would be prejudicial to the opposing party,

there has been bad faith on the part of the moving party, or the amendment would be futile,"

*Franks*, 313 F.3d at 193. Here, Defendants do not contend that there is bad faith on the part of

the Plaintiff or that her amendment would be futile. *See generally* Defs.' Opp'n 1–6.

Accordingly, I consider only whether Plaintiff's proposed amendments would be prejudicial to

Defendants. *See Jones v. Castro*, 200 F. Supp. 3d 183, 186 (D.D.C. 2016) ("Because leave to

amend should be liberally granted, the party opposing amendment bears the burden of coming

forward with a colorable basis for denying leave to amend."). "Whether an amendment is

prejudicial will often be determined by the nature of the amendment and its timing." *Laber*, 438

F.3d at 427. And in assessing prejudice, courts consider "the particular circumstances presented,

including previous opportunities to amend and the reason for the amendment." *Abdul-Mumit v.*

*Alexandria Hyundai, LLC*, 896 F.3d 278, 293 (4th Cir. 2018) (internal quotation marks omitted).

Generally, an amendment is prejudicial if it "raises a new legal theory that would require the

7

gathering and analysis of facts not already considered by the [defendant, and] is offered shortly before or during trial." *Laber*, 438 F.3d at 427 (alteration in original). By contrast, an amendment is not prejudicial if it "merely adds an additional theory of recovery to the facts already pled and is offered before any discovery has occurred." *Id.*; *see Scott v. Family Dollar Stores, Inc.*, 733 F.3d 105, 118–19 (4th Cir. 2013) (reversing district court's denial of leave to amend where proposed amended complaint did not "allege an entirely new theory . . . but rather elaborate[d] on one of two allegations that were previously pled in a conclusory fashion"). "The party opposing amendment bears the burden of showing prejudice." *Atl. Bulk Carrier Corp. v. Milan Express Co.*, No. 3:10cv103, 2010 WL 2929612, at *4 (E.D. Va. July 23, 2010) (citing *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 187 (9th Cir. 1987)).

Here, Defendants correctly point out that this litigation began two years ago and that trial is upcoming. Defs.' Opp'n 1–2. Trial is set for October 4–6, 2021, and fact discovery concluded on July 6, 2021. *See* Second Am. Sched. Order 1–3. Defendants also argue that, "[h]ad Omni been apprised of this aspect of Plaintiff's case, it would have undertaken more extensive third-party discovery to gather pertinent information regarding the capabilities of the subject Segway." Defs.' Opp'n 5. On balance, despite the late procedural posture of this case, I find Defendants' arguments unpersuasive because Plaintiff's proposed amendments merely "elaborate," *Scott*, 733 F.3d at 119, on her initial allegations and because Defendants *did* have ample time to conduct discovery relating to Plaintiff's proposed amendments.

1.      *Plaintiff's proposed amendments clarify and add detail to her original allegations*

Plaintiff's proposed amendments merely clarify and add factual detail to the allegations in her original complaint. *See Scott*, 733 F.3d at 118–19. Her complaint repeatedly referenced the condition of the tour trail, calling it rocky, uneven, and hilly, *see* Compl. ¶¶ 26–29, 32, 35, ECF

No. 1-4, and alleged that Defendants failed to warn of and properly train her regarding the risks of driving a Segway on such terrain, explaining: "[a]t no point during the training was [Plaintiff] trained on driving a Segway on a rocky, uneven, and hilly pathway or warned or informed of the risk of driving a Segway on a rocky, uneven, hilly pathway," *id.* ¶ 28; *see also id.* ¶¶ 19, 21–25, 27, 30. Her proposed amendments simply add "additional facts supporting [those] previous assertions," *Scott*, 733 F.3d at 118, by alleging that the trail "had gravel and loose materials on the surface," Proposed Am. Compl. ¶¶ 19, 20, 21, 23, ECF No. 58-1; that Defendants failed to train or warn Plaintiff that operating a Segway "on gravel or other surfaces containing loose materials . . . could lead to a loss of traction and a fall," *id.* ¶ 22, *see also id.* ¶¶ 37, 44(c); and that Defendants "knew or should have known that the Segway manufacturer repeatedly warned against the dangers of operating a Segway on a surface that contained gravel, loose materials, declines, and other hazards," *id.* ¶ 35; *see also id.* ¶¶ 38, 44(d). Contrary to Defendants' assertions, these proposed amendments do not add new claims or parties or otherwise materially "change the character of the litigation." *Deasy*, 833 F.2d at 42. *Compare id.* (finding prejudice where plaintiff sought leave to amend complaint shortly before trial to add an entirely new claim, defending against which would require defendant to develop "proof . . . of an entirely different character than [that] which the defendant had been led to believe would be necessary"), *with Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999) (finding no prejudice where "all of the allegations" plaintiff sought to add through his amended complaint "derived from evidence obtained during discovery regarding matters already contained in the complaint in some form and, except for [one allegation], merely sought to add specificity to those matters"). Rather, the allegations add specificity to the conditions of the trail and Defendants' failure to warn and train.

9

2.    *Plaintiff provided ample notice of her focus on the user manual and Defendants' alleged failure to train or warn regarding safety warnings*

Defendants have had notice of Plaintiff's intent to focus on the Segway user manual and Defendants' alleged failure to warn about or train her regarding specific guidance found therein for approximately six months. On January 8, 2021, Plaintiff served detailed supplemental interrogatory responses upon Defendants elaborating on these allegations and theories. *See* Pl.'s Reply Ex. 1, Pl.'s Second Suppl. Answers and Objs. to Defs.' First Interrogs. 3–6, ECF No. 61-1. For example, one of her supplemental interrogatory responses is more than three-and-a-half single-spaced pages long and claims, among other things, that Defendants "knew or should have known" of the "unique characteristics and features" of Segways that could cause injury or death "if not properly understood due to inexperience or lack of knowledge," *id.* at 3; should have warned guests that "obstacles and certain hazards (like slippery, icy, or wet surfaces, loose materials (like sand/gravel), and steep slopes) should be avoided by navigating around them," *id.* at 4 (punctuation corrected); should have warned guests "that, if a rider cannot avoid slippery surfaces, loose materials, steep slopes, and obstacles, [she] must step off and use[] riderless balance mode to cross the dangerous terrain," *id.*; "knew or should have known . . . that [the] trail was unsafe in light of the unique characteristics of the Segway which were not disclosed to guests," *id.*; failed to warn "Plaintiff of these unique attributes of the Segway she would be riding in light of the terrain she would be encountering," *id.* at 4–5; "failed to provide the skills or experience a rider would need to encounter or traverse the unique obstacles, risks, and hazards that Plaintiff would encounter on the trail in question," *id.* at 5; and failed to inform Plaintiff "that the path she would be taking would be at a location or on paths different in kind or degree than what she had practiced on," *id.*

10

Subsequently, on February 23, 2021, Plaintiff conducted a Rule 30(b)(6) deposition of Defendant Omni, during which her attorney questioned Omni's corporate representative, James Deboe, about Segway's user manual. *See generally* Pl.'s Reply Ex. 2, Rule 30(b)(6) Dep. of Def. Omni (Feb. 23, 2021), ECF No. 61-2. At Plaintiff's counsel's prompting, Deboe discussed a Segway "owner and operator's manual," *id.* at 5, that applied to Segway models i2 and X2, *id.* at 26. He explained that the manual was "available to" Omni employees, *id.* at 5; that it had "the basic information that you need to be familiar with the machine," *id.* at 6; and that to his knowledge, guests participating in Defendants' Segway tours were not told to read the manual before being allowed to go on the tour, *id.* at 16. Instead, Deboe explained that participants watched a training video, supplied by non-party Segtown, that "covers what needs to be covered." *Id.* at 16; *see also id.* at 38 (referring to the Segtown video as a "staple" of Omni's pre-tour training). Deboe also explained that tour participants signed a release prior to taking the tour, *id.* at 19–20, but he acknowledged when questioned by Plaintiff's counsel that the release did not warn of (1) risk or danger because the "tour route included gravel road surfaces," (2) risk because of "failure to read the Segway manufacturer's owner's manual" before operating the Segway, or (3) risk because of failure to "provide sufficient practice time to obtain competence on the Segway," *id.* at 23; *see also id.* at 25. Deboe also agreed that Segway "would have a more intricate knowledge of Segway than The Omni," *id.* at 27; agreed that the manual was "an important source of information about how to safely use a Segway," *id.* at 27–28; and acknowledged that although the manual instructed users to "read and follow all instructions and warnings in the user materials" in order to "ride safely," Omni did not require participants who were riding Segways to read all of the instructions and warnings in the user materials, *id.* at 28–29; *see also id.* at 30–32, 36–38, 58. When asked about whether gravel surfaces posed a hazard

11

for Segways, Deboe asserted that "[t]he x2 [Segway model] is designed specifically to be able to hold traction very easily on the surface in question due to the type of tires that were used." *Id.* at 42; *see also id.* at 50 (asserting that the "surface in question, whether it contained gravel, and a slight pitch, was completely suitable for use with the x2 Segway"). Nonetheless, he agreed that the user manual applied to the x2 model and advised users "to avoid obstacles and slippery surfaces that could result in a loss of balance or traction and cause a fall." *Id.* at 43; *see also id.* 46–47, 62–63. And he acknowledged that there was "some downhill slope and . . . some gravel on the trail" where Plaintiff was injured. *Id.* at 47; *see also id.* at 57–58 (describing the trail).

Next, Plaintiff supplemented her interrogatory responses on June 21, 2021, to "incorporate[] by reference the expert disclosures and reports of Dr. Louis Bloomfield and Mr. Jonathan Rivera." Pl.'s Second Suppl. Answers and Objs. to Defs.' First Interrogs. 6–7, 8, 10, ECF No. 61-1. Like the discovery discussed above, these reports highlighted Plaintiff's focus on the gravel surface of the trail she was taken on, the Segway user manual, Defendants' knowledge of its contents, and Defendants' alleged failure to adequately warn and train Plaintiff regarding the safety warnings provided therein. Specifically, Dr. Bloomfield's report provides a detailed explanation of the physics of how the Segway x2 works. Pl.'s Reply Ex. 3, Expert Report of L. Bloomfield, Ph.D. 6–17 (May 4, 2021), ECF No. 61-3. It also concludes that the Segway user manual's warning to avoid abrupt stops and slippery surfaces, which could cause the Segway's tires to lose traction, is consistent with principles of physics, *id.* at 12; explains that the user manual applies to the x2 model, *id.* at 15; and explains that novice riders would not likely be aware of the risks of losing traction while riding a Segway without prior warning, *id.* at 16. Similarly, Jonathan Rivera's report "utilizes industry standards to identify and assess" whether Omni adequately examined and managed the risks associated with offering Segway tours. *See*

12

Pl.'s Reply Ex. 4, Expert Report of J. Rivera (May 6, 2021), ECF No. 61-4. The report observes

that the Segway user manual warned against operating the Segway x2 on loose materials such as

gravel, *id.* at 4; that the Omni "had the tools and knowledge to know about the inherent and

unnecessary risks that were associated with its Segway Tour activity," *id.* at 5; that the Omni

could have avoided some of the risks of the Segway tour by using a different trail/path, by

informing guests of all relevant risks and dangers (including danger of loss of traction caused by

riding on loose materials and gravel), and by providing adequate training on what to do when

encountering such terrain, *id.*; that Omni's warnings and training were not sufficient to prepare

riders to safely use the Segway x2, *id.* at 6; and that the most likely explanation for Plaintiff's fall

is that her Segway's wheels lost traction because she was driving on gravel, *id.* at 13–15.

       3.      *Defendants have developed evidence to address Plaintiff's amended allegations*

      Defendants cannot claim to be surprised or prejudiced by Plaintiff's proposed

amendments where they have already had the opportunity to rebut those allegations with

contradictory expert testimony. In their Rule 26(a)(2) Expert Disclosures, Defendants disclosed

that they had retained two expert witnesses to rebut Plaintiff's experts' testimony. Pl.'s Reply

Ex. 5, Defs.' Rule 26(a)(2) Expert Disclosures 15–18, 22–24, ECF No. 61-5. Specifically, Scott

R. Lucas, Ph.D., P.E., a "biomechanical engineer and safety expert," is expected to testify that

the trail in question "was appropriate for use with the Segway x2 PT" and "address and/or rebut

testimony from Dr. Bloomfield, Mr. Rivera or any expert or lay witness proposed by Plaintiff

regarding Segway operations or biomechanics." *Id.* at 16–17. And Bob Serfass, "an

accomplished outdoor recreation executive," is expected to testify that Defendants' procedures

and protocols for training Segway tour staff and guests "met if not exceeded the industry

standard of care for Segway training"; that the waiver Plaintiff signed "was detailed and met

industry standards"; that the training areas, training path, and trail in use at the time of Plaintiff's

tour were appropriate for use with the Segway x2; that the trail in use at the time of Plaintiff's

tour was "easier" than other Segway x2 tour trails with which he is familiar; and that the "most

likely cause" of Plaintiff's accident was user error. *Id.* at 22–23. Defendants also disclosed that

they intend to offer testimony from three unretained witnesses. Specifically, Mr. Deboe ("and/or

other Omni representative") is expected to testify that Omni adequately trained its Segway

guides and guests, that Omni's policies for tour route selection and maintenance were "consistent

with the prevailing standard of care," and that the selected tour route was "appropriate for a

guided off-road Segway x2 tour." *Id.* at 24–25. Similarly, Ryan Lindsay, a "former Recreation

Attendant" who supervised the Segway tour on which Plaintiff was injured, is expected to testify

that Omni's training for tour guides and guests "was thorough, consistent or in excess of [the]

nature/extent of training provided by similarly situated resorts and otherwise consistent with the

prevailing standard of care"; that Omni's training involved providing guests with a "written

waiver that explicitly advised [them] of the risks associated with the operation of Segways"; that

Omni provided accurate information to all tour participants; "that the waiver was in all respects

adequate"; that Omni's policies for Segway tour route selection and maintenance were

"consistent with the prevailing standard of care"; that the selected tour route was "appropriate for

a guided off-road Segway x2 tour"; and that the "most likely cause of the incident was user error

by Plaintiff." *Id.* at 25–26. And Travis Braxton, an "Outdoor Activities Supervisor at the Omni

Homestead Resort" is expected to offer similar testimony regarding Omni's training and

warnings provided to Segway tour guests, Omni's policies and procedures for selecting and

maintaining Segway tour routes, and the appropriateness of the selected tour route for a Segway

x2 tour. *Id.* at 27–29.

14

\*

Although the Court is mindful that fact discovery has now closed and that trial is set to begin in just over two months, the record reflects that Defendants were aware of Plaintiff's elaborations on her allegations for approximately six months before the close of discovery. As part of the discovery process, Plaintiff clarified her allegations in great detail in supplemental discovery responses served in January 2021, and she questioned Omni's Rule 30(b)(6) representative about the Segway user manual at length in February 2021. Indeed, Defendants were well-aware of Plaintiff's allegations and theories because they took steps to retain experts to counter Plaintiff's expected expert testimony on those issues. Accordingly, I cannot find that allowing Plaintiff to amend her complaint, even at this late stage in litigation, would prejudice Defendants. *See CDS Family Tr. v. Martin*, No. 1:15cv2584, 2020 WL 758129, at \*4–5 (D. Md. Feb. 14, 2020) (rejecting defendants' assertion of prejudice from amended allegations where plaintiffs' focus on new issue "was not only addressed during a deposition, but *also* resulted in motions practice, occurred before the discovery deadline . . ., and prompted a vigorous deposition in September 2018" and where the proposed amendments did not add parties, claims, or new legal theories); *cf. Atl. Bulk Carrier Corp.*, 2010 WL 2929612, at \*3–5 (granting defendant leave to amend pleadings to assert counterclaim "approximately one month" before trial where the evidence showed plaintiff was informed of the counterclaim, which was based on facts "well known" to plaintiff, at least one month before the close of discovery, leaving time for plaintiff to "prepare a sufficient defense" to the counterclaim, including by "investigat[ing] the Counterclaim during its deposition of [defendant's] corporate representative").

IV. Conclusion

15

For the reasons stated above, Plaintiff's Motion for Leave to File Amended Complaint,

ECF No. 58 will be granted by separate order entered today.

ENTER: July 28, 2021

Joel C. Hoppe
U.S. Magistrate Judge